U-FINISH HOMES *v.* HALE.

5-3312                                                               382 S. W. 2d 583

Opinion delivered October 12, 1964.

*Clark, Clark & Clark,* for appellant.

*Hale & Henson,* for appellee.

CARLETON HARRIS, Chief Justice. On January 8, 1963, U-Finish Homes, appellant herein, obtained a judgment against American Homes and Cabins, Inc., for $3,594.12. In March of 1963, appellant caused writs of garnishment to be issued, directed to John E. Hale, Sr., and Ray Cooper, appellees herein; appellant alleged that Hale and Cooper were indebted to American Homes and Cabins. The court, after denying a motion by appellant for summary judgment, and after hearing testimony on a motion for judgment against the garnishees, ordered the writs of garnishment dismissed.

The facts are as follows:

American Homes and Cabins, an Arkansas corporation, was incorporated in February, 1962, for the purpose of building shell homes, and was engaged in that business at the time of the events giving rise to this litigation. Howard Mozingo was president of the corporation, and John E. Hale, Sr., one of the appellees herein, served as secretary, and also as part-time bookkeeper, for which he received the sum of $25.00 per month.[1] Hale originally held 100 shares of stock in the company, and later acquired 200 shares from H. J. Allison, who had been one of the original incorporators. Appellee Cooper purchased 100 shares of stock from Howard Mozingo for the sum of $300.00.

On August 2, 1962, Hale and Cooper executed a "Stock Sale and Transfer," by which Hale sold his 300 shares to Howard Mozingo, and Cooper sold his 100 shares to Marie Mozingo, wife of Howard; all shares were sold at $4.50 a share. The stock certificates, evidencing Hale's ownership of 300 shares, and Cooper's ownership of 100 shares, were endorsed to the Mozingos on August 16, 1962. Hale was paid for his stock by a check for $1,350.00, drawn on the account of American Homes and Cabins, Inc., at the National Bank of Commerce, Pine Bluff, Arkansas. Cooper was paid for his stock by a check for $450.00, drawn on the same account. The checks were signed by Howard Mozingo, as president, and countersigned by John E. Hale, Sr., as secretary of American Homes and Cabins. On the same date that he disposed of his stock, Hale resigned as secretary of the corporation, and a new secretary was elected on the same day. Appellant, after obtaining the judgment against American Homes and Cabins, caused writs of garnishment to be issued against Hale and Cooper. In the motion for summary judgment, appellant sought judgment against Hale for $1,350.00, plus interest and costs, and against Hale and Cooper, jointly and severally,

[1] Hale was regularly employed by National Investors Life Insurance Company.

for $450.00, plus interest and costs,[2] alleging that the use of the corporate funds for purchase of the stock, at a time when the corporation had outstanding debts, constituted a fraud upon the creditors of American Homes and Cabins; it was asserted that appellant (as a creditor) was entitled to recover from Hale and Cooper the amounts of corporate funds that they had received. As previously stated, the court held contrary to appellant's contention, and ordered the writs of garnishment dismissed. Thus, this appeal.

Appellant states that only one question is involved in this litigation, *viz*:

"To what extent is a corporate stockholder who sells his stock in the corporation to another stockholder and receives his pay, not from the stockholder to whom the shares were sold but from the assets of the corporation, liable to the creditors of the corporation for the corporate funds so received by him?"

That question cannot readily be answered under the proof in this case for the answer depends upon the financial condition of the corporation at the time of the transfer. We think, for liability to attach to the seller, in favor of a creditor, it should appear that the corporation was insolvent, or was, at least, on the verge of insolvency. The term, "insolvent," is given several meanings, both in legal and standard dictionaries, and has been used in situations varying all the way from "unable to pay debts as they fall due in the usual course of business" to "one who has gone into bankruptcy." Webster's Third New International Dictionary also defines the term as "having liabilities in excess of the reasonable market value of assets held."

The books, or account ledgers, of American Homes and Cabins were not introduced into evidence, but rather the contention made by appellant (that liabilities exceeded assets) is based on oral testimony and answers

---

[2] Liability against Hale for the $450.00 was asserted because of the fact that Hale had, as secretary of the corporation, signed the check to Cooper, along with Mozingo, the president.

to depositions. The record here is not easy to follow, and the testimony is quite conflicting in some respects; it is extremely difficult to determine just what amount of indebtedness was *past due,* but there is definitely no evidence that American Homes and Cabins had (or has) been adjudged a bankrupt; nor is there any evidence of executions returned unsatisfied.[3]

In its brief, appellant has compiled a list of creditors of the corporation as of August 16, 1962, together with the amounts due such creditors, and the amounts are totaled at $17,528.70. Assets are listed as $7,917.06, including bank account of $6,517.06, but not including a 1957 Ford automobile, upon which no value is placed. But these figures do not establish that the corporation was insolvent, or that liabilities exceeded assets on August 16. For instance, the list includes indebtedness due Stewart Building Supplies, Inc., arising from the various jobs wherein Stewart furnished supplies. One listed is the ''Elton Dixon Job,'' wherein it is shown that American Home and Cabins owed $2,936.90. However, the record reflects a check in that amount, payable to the Stewart Company, given on the 16th day of August, and cashed on August 17. Another creditor listed by appellant is Bahner Abstract Co., which, according to appellant, was due $648.22. Mr. Ott, president of the abstract company, in responding to interrogatories, testified that this amount was paid on August 17, 1962. G.M.A.C. is also listed as a creditor in the amount of $886.36, but this amount was paid by American Homes, through check, on the 16th of August. These payments total $4,471.48. While it is true that these amounts paid, are due to be deducted from the amount of cash shown in the bank, and heretofore mentioned, the bank statement further shows that during the period from August 16 to September 1, alone, over $9,500.00 was deposited in the bank by the corporation.[4] Hale also

---

[3] One of appellees' attorneys made the statement: ''There has been an execution.'' This, of course, was not evidence, even if the return were shown.

[4] The bank statement does not show the payment of the G.M.A.C. check. The check, however, is in the transcript, but the date of payment cannot be definitely determined.

testified that Mozingo had $8,000.00 worth of checks on August 16, which the corporation had evidently received from sale of houses.

The record reflects that the first judgment was obtained on December 4, 1962.

According to the evidence of Hale, he received the 200 shares of stock from Allison in payment of $400.00 due this appellee for bookkeeping work, and the 100 shares from the corporation were likewise received in payment of services performed by attorneys, one of which was Hale's brother, appellee testifying that these shares were held in trust by him for the benefit of the attorneys who had not been paid. Hale stated that he sold the stock because he needed the money at that time. Cooper simply bought the stock as an investment, and subsequently resold it for a profit.

The Chancellor viewed these witnesses, heard their testimony, and was in a far better position to evaluate the evidence. It was his finding that the writs of garnishment should be dismissed, and we are unable to say that the Chancellor's findings were against the preponderance of the evidence.

Affirmed.